IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GEORGE VESPER, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | |
| v. | Civil Action No. 1:15-cv-01322 (JBS/AMD) |
| 3M COMPANY, et al., | |
| Defendants. | **OPINION** |

APPEARANCES:

Michael S. Noonan, Esq.
THE NOONAN LAW FIRM LLC
64 East Main Street
Freehold, NJ 07728
-and-
William L. Kuzmin, Esq.
COHEN, PLACITELLA & ROTH, P.C.
127 Maple Avenue
Red Bank, NJ 07701
    Attorneys for the Plaintiff

Michael Joseph Block, Esq.
WILBRAHAM, LAWLER & BUBA
30 Washington Avenue
Suite B3
16th Floor
Haddonfield, NJ 08033
    Attorney for Defendant Buffalo Pumps, Inc.

Marc J. Wisel, Esq., and Matthew P. Kessler, Esq.
MCGIVNEY & KLUGER, P.C.
23 Vreeland Road
Suite 220
Florham Park, NJ 07932
    Attorneys for Defendants DAP, Inc., and Sid Harvey
    Industries, Inc.

Paul C. Johnson, Esq.
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN, PA
Woodland Falls Corporate Park
200 Lake Drive East
Suite 300
Cherry Hill, NJ 08002
    Attorney for Defendant Warren Pumps


**SIMANDLE, Chief Judge:**

This matter comes before the Court on Defendants Buffalo Pumps, Inc.'s; DAP, Inc.'s; Sid Harvey Industries, Inc.'s; and Warren Pumps' respective motions for summary judgment. [Docket Entries 107; 98; 99; 95.] On August 14, 2014, Plaintiff filed a complaint in New Jersey Superior Court against 31 named defendants, alleging that he was exposed to defendants' asbestos products at various worksites where Plaintiff worked as machinist, pipe fitter, and electrician during the 1950s, 1960s, and 1970s. The case was subsequently removed to this Court. [Docket Entries 1, 58-59.]

Defendant Buffalo Pumps, Inc. ("Buffalo"), argues that Plaintiff has failed to offer any evidence that would tend to show that Plaintiff was exposed to asbestos as a result of any work with or around Buffalo equipment; Buffalo avers that there is no genuine issue of material fact as to whether Buffalo is responsible for Plaintiff's asbestos exposure and therefore for his subsequent injuries and that it is therefore entitled to summary judgment. [Docket Entry 107 at 1.] Plaintiff has not

filed a response to Buffalo's motion. For the reasons discussed below, the Court finds that Plaintiff has failed to offer evidence showing that there is a genuine issue of material fact as to whether exposure to any Buffalo equipment caused his alleged asbestosis, and Buffalo's motion for summary judgment will be granted.

Defendant DAP, Inc. ("DAP") argues that Plaintiff has not produced sufficient evidence to establish that he was exposed to asbestos as a result of working with a product manufactured by DAP. For the reasons discussed below, the Court finds that there is a genuine issue of material fact as to this Defendant, and DAP's motion for summary judgment will be denied.

Defendant Sid Harvey Industries, Inc. ("Sid Harvey") argues that Plaintiff has failed to proffer evidence sufficient to establish a genuine issue of material fact that he was exposed to asbestos due to any product or equipment manufactured, distributed, or sold by Sid Harvey. For the reasons discussed below, the Court finds that Plaintiff has failed to offer evidence showing that there is a genuine issue of material fact as to whether any product made, supplied or distributed by this Defendant exposed Plaintiff to asbestos; Sid Harvey's motion for summary judgment will be granted.

Defendant Warren Pumps ("Warren") argues that Plaintiff has failed to present sufficient evidence to allow a reasonable finder of fact to conclude that Plaintiff was exposed to asbestos attributable to Warren, or that such exposure was a proximate cause of his alleged injury. For the reasons discussed below, the Court finds that there is a genuine issue of material fact as to this Defendant, and Warren's motion for summary judgment will be denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The instant action arises out of Plaintiff George Vesper's alleged exposure to asbestos from a variety of products mined, milled, manufactured, sold, supplied, purchased, marketed, installed and/or removed by various corporations, including Defendants Buffalo, DAP, Sid Harvey, and Warren. [Compl., Docket Item 1-2, ¶¶ 1-6.] Plaintiff filed the Complaint in New Jersey Superior Court, Middlesex County, on August 14, 2014, naming 31 defendants.[1] (Id.)

---

[1] Plaintiff named as defendants 3M Company; Alcatel-Lucent, USA, Inc.; American Premier Underwriters, Inc.; Bayer Cropscience, Inc.; Borg Warner Corporation; Buffalo Pumps, Inc.; CBS Corporation; Certaineed Corporation; Coltec Industries; Consolidated Rail Corporation, Inc.; Copes-Vulcan, Inc.; Crane Pumps & Systems, Inc.; DAP Inc.; Durametallic Corporation; Duro Dyne Corporation; Fairbanks Morse Engine and Enpro Industries, Inc.; Foster Wheeler, LLC; General Electric Company; Georgia-

In the Complaint, Plaintiff alleged that he worked as a machinist, pipe fitter and electrician during the 1950s, 1960s, and 1970s, and was exposed to and came in contact with asbestos products "at various worksites including The New York Ship Building Company [in Camden, New Jersey], the Rail Yards of the Pennsylvania Railroad located in New Jersey as well as other sites throughout the State of New Jersey during the 1950's, 1960's, and 1970's." (Compl. ¶ 1.) Plaintiff alleged that he was also exposed to asbestos as a result of doing home renovations and improvements (via asbestos shingles and other products) and working in the automotive industry (via brakes and clutches). (Complaint ¶ 2 and Docket Entry 95-5 at I.6.) Plaintiff alleged that Defendants manufactured or supplied the asbestos-containing products to which he was exposed, and that he developed asbestosis in 2013 as a result of the exposure. (Complaint ¶ 4.)

On February 3, 2015, Plaintiff served Defendants with a copy of their Answers to Standard Interrogatories. [Pl. Interrog. Resp., Docket Entry 95-5.] In response to a question concerning his on-the-job exposure to asbestos, Plaintiff wrote,

---

Pacific, LLC; Gould Pumps, Inc.; Honeywell International Inc.; IMO Industries Inc.; Ingersoll-Rand Company; Marley Wylain Company; Motion Control Industries; Notte Safety Appliance Company; Owens-Illinois, Inc.; Sid Harvey Industries, Inc.; Union Carbide Corporation; Warren Pumps; and Weil-McLain Company. (See Complaint [Docket Item 1-2], at 1-3.)

> I believe I was exposed to asbestos from the 1950's to
> 1970's at the following worksites:
> New York Ship Building Company – Camden, NJ
> - USS Savannah
> - USS Kitty Hawk
> - USS Bonefish
> - USS Little Rock
>
> Pennsylvania Railroad – Camden, NJ

(Id. I.6.) Vesper worked at New York Ship Building from approximately 1958 to 1961. [Pl. Dep., Docket Entry 114-1, 187-89.] Vesper also stated his belief that he was exposed to asbestos-containing products in the form of Buffalo pumps, DAP joint compound and caulk, Sid Harvey furnace cement and other "asbestos products" supplied or distributed by Sid Harvey, and Warren pumps. [Pl. Interrog. Resp. I.6.]

## A. Buffalo

Vesper was deposed as a part of this case on February 10, 11 and 12, 2015. [Docket Item 107, Exs. 1-3 ("Pl. Dep.").] Vesper testified that during the period of time when he worked as a machinist helper on the USS Kitty Hawk, other workers were installing "pumps" associated with the ship's propulsion system (upon which Vesper worked directly); those pumps and their associated plumbing were "being surrounded by asbestos" while Vesper was working in the same environment. [Pl. Dep. 218:11-221:19.] When Vesper was asked whether he knew the brand, trade

or manufacturer's name of the pumps that he saw other men hammering the asbestos-containing gasket onto in the engine room of the USS Kitty Hawk, Vesper replied, "I'm sure some of them were Crane"; he did not name any additional manufacturer and then stated that he did not believe he was exposed to asbestos "in any other way while [he] was working in the engine room of the Kitty Hawk on mounting of the main propulsion system." [Id. at 229:2-25.] Although asked about manufacturers and brand names he believed or remembered to be potentially associated with his exposure to asbestos at New York Ship Building and naming five such manufacturers, Vesper did not mention Buffalo, DAP, Sid Harvey, or Warren at that time. [Id. at 377:2-381:24.]

At his deposition on February 11, 2015, Vesper described how he may have been exposed to asbestos while working as a sheet metal worker for Pennsylvania Railroad, saying that as he worked with the hot water and cooling systems on locomotives, he would have to remove asbestos insulation from that equipment in order to perform the work on it. [Id. at 426:16-428:1.] In addition, Vesper believed he would have been exposed to asbestos while doing plumbing and piping repairs on locomotives as a result of close proximity to another machinist replacing brake shoes and other brake system components (which contained asbestos) at the same time. He could not recall any additional

ways he would have been exposed to asbestos as a sheet metal worker at the Pennsylvania Railroad; nor could he recall brand, trade, or manufacturer names for any of the asbestos-containing materials to which he would have been exposed. [Id. at 428:2-21; 427:8-12.] Vesper also stated that he could have been exposed to asbestos while working as an electrician for the railroad due to being in close proximity to machinists replacing asbestos-containing brake shoes while he performed electrician duties. [Id. at 393:4-396:1.]

On February 12, Vesper was asked directly by counsel for Buffalo:

> Q: Do you associate the name, Buffalo, with any type of equipment that you would have worked on during your career.
>
> A: My recollection just brings into mind either pumps or valves or something of that nature.
>
> . . .
>
> I'm reasonably certain that it's associated with one of those two objects, but I'm not exactly certain which.
>
> Q: Where were you working when you would have encountered either a Buffalo pump or valve?
>
> A: The two most likely places either would have been either the New York Shipyard or the railroad.

[Id. at 792:18-793:10.] Defense counsel asked Vesper:

> Q: Is it fair to say that you have no personal recollection of performing any work on a Buffalo pump or valve?

A: I'm a little vague on how to answer that question
because, I mean, I can't remember picking this cup and
saying it said Buffalo on it. I know I've had Buffalo
in my hands. I know I've been around Buffalo equipment
and stuff. It's just I can't say, specifically, that I
picked up things and said, oh, this is Buffalo pump
from Buffalo valve and put it in. I'd be lying.

...

Q: Okay. Is it fair to say, sir, that as you sit here
today under oath, that you cannot offer any testimony
that you were exposed to asbestos from a Buffalo pump
or valve?

MR. NOONAN: Objection.

A: Not that I am aware of.

Q: Okay. You're not able to tell me any of the ships
where you worked aboard, whether there was [sic] any
Buffalo pumps or valves on those ships?

A: No.

[Id. at 793:14-794:18.] Upon questioning from his attorney,

Vesper later stated that he had "a general recollection" of

working with Buffalo pumps, "which [was] a little on the vague

side, but I know I definitely used them, and I know I handled

them." Vesper concluded: "I'm gonna think about it and remember

it." [Id. at 960:25-961:4.]


**B. DAP**

At his deposition, Vesper testified about his use of DAP

products, primarily at home improvement projects on two

residential properties in the mid-1970s (namely, one home and

one townhouse). [Docket Entry 98-5, Pl. Dep. 450:12-464:12;

Docket Entry 110-3, Pl. Dep. 452-464 and 658-669.) Vesper

testified on February 12 as follows:

> Q: If I understood your testimony correctly, you used
> DAP caulk; is that correct?
>
> A: DAP caulk and DAP spackling. I think it was more
> than – I see it as a spackling, what we called mud
> type of product, also.
>
> Q: How did it come packaged?
>
> A: My recollection is that it was in – I used DAP in
> tubes for something, and I also used DAP in a
> container.
>
> [Pl. Dep. 658:19-659:4.] Vesper had previously testified

that he believed he had been exposed to asbestos at 47 Potter

Lane (one of the properties) while doing sheetrock repair:

"taping [the new sheetrock panels] with what they call spackling

or mud, sanding them smooth and repainting." [Id. at 452:2-4.]

Vesper continued: "I am sure that I was using a product which is

called DAP. It's a compound. . . . [A]t that point I was a

little bit new at that kind of stuff, so I actually read the

label, and . . . I noticed that the contents label said that it

had asbestos in it." [Id. at 452:12-23.] Vesper testified that

he believed he reused the same "mud or spackling compound" at

the Rittenhouse Square property and stated: "It was probably

left over from the first process [at 47 Potter Lane]. You don't

10

throw it away, it's in an airtight kind of container. You can seal it and reuse it." [Id. at 462:2-15.] Vesper also described replacing damaged asbestos shingles and using asbestos-containing roofing cement for roofing repairs, but did not associate DAP products with that work. [Id. at 454:14-456:12.]

On February 12, Vesper went into greater detail about the two DAP products he recalled using. He described one as a "tube of caulk," possibly "one of those little squeeze tubes" rather than a three-inch-diameter, foot-long tube, containing a "white" "liquid material or gooky material." [Id. at 661:8-22.] In contrast, he described a second material in a "container" or "can" approximately "three, four inches around and maybe four, five inches high," comprising "a pint or a quart" of a "grayish-white" product that was "more like a mud . . . [y]ou know, putty" rather than a "gooky" material. [Id. at 661:4; 662:16-663:13.] Vesper clarified that he would not describe it as gritty, but that "it was supplied with a putty knife and you sand it." [Id. at 662:12-16.] Vesper described using both materials to perform sheetrock and drywall repairs. [Id. at 664-669.] Vesper also affirmed in an affidavit executed on March 23, 2016 that he used two different DAP products, caulk in a tube and compound in a can, for home renovations and improvements on a regular and frequent basis, thereby exposing himself to dust

11

from those products when sanding them before applying another coat. [Docket Entry 110-3 at 3-4, ¶¶ 6-8.] To the best of Vesper's recollection, he performed these renovations at 47 Potter Lane in "the mid-1970s" and at Rittenhouse Square, which Vesper purchased in or around 1975. [Pl. Dep. 453:8-15; 463:7.] Vesper also testified that he believed he probably used DAP products on other occasions, but did not recall which specific places or occasions: "I just did so much of that type of work and repairs and stuff, I just don't remember where I used *them*." [Id. at 669:10-12.] (Emphasis added.)

DAP submits the affidavit of Ward Treat (an employee who held titles of Senior Chemist, Assistant Quality Control Manager, and Technical Support Specialist at DAP from 1973 to 1990) to show that it has manufactured a spackle product, but that the spackle product does not and has never contained asbestos. [Docket Entry 98-6 ¶¶ 2-5.] DAP submits another affidavit executed by Mr. Treat to establish that DAP did not manufacture a joint compound prior to 1978; and that DAP manufactured a premixed spackle compound, which never contained asbestos. [Docket Entry 98-7 ¶¶ 8-10.] DAP also affirmed in its interrogatory responses that it

> manufactured and sold products that did not contain
> asbestos, such as its spackling and some of its
> caulking products. [DAP] also manufactured some
> products that contained limited amounts of

> encapsulated chrysotile asbestos. [DAP] denies that
> chrysotile asbestos fibers constitute a substantial
> factor contributing to a plaintiff's risk of
> developing cancer. Any of [DAP's] caulking products
> which may have contained chrysotile asbestos were wet
> and gooey formulations thereby making the asbestos
> fibers non-respirable. . . . [DAP] did not recommend
> sanding of these products because if sanded, they
> would ball up and become gummy. [DAP] ceased the
> manufacture and sale of all asbestos-containing
> products by the end of 1978.

[Docket Entry 98-8 at 17, ¶ B.46.] Mr. Treat previously

testified at a deposition in a different case on January

13, 2010, that there was a time, beginning in approximately

1973, "when a decision was made [at DAP] to take asbestos

out of the caulks and putty." [Docket Entry 110-6 at 7.]

Plaintiff has also submitted formula cards, specifications

and information for DAP caulking compound (i.e., caulk),

showing the presence of asbestos. [Docket Entries 110-4 &

110-5.]


**C. Sid Harvey**

In his interrogatory answers, Plaintiff identified Sid

Harvey as the supplier and/or distributor of asbestos products,

and specifically named Sid Harvey furnace cement as an asbestos-

containing product to which he was exposed. [Pl. Interrog. Resp.

¶ I.6.] At his deposition, Vesper testified that he associated

the name Sid Harvey with "[s]ome type of cement. I say Sid

Harvey and I remember cement and I remember handling it and I remember applying somewhere" but could not provide further details beyond that he remembered using it in the 1970s. Plaintiff could not remember the color, texture, or packaging of the cement; where he may have gotten it; where he may have used it; or whether the Sid Harvey cement he remembered using did or did not contain any asbestos. [Pl. Dep., Docket Entry 124-1, 671:24-674:16.] Plaintiff only associated the cement and no other products with the name Sid Harvey. [Id. at 674:14-16.]

In its interrogatory responses, Sid Harvey stated only that it "was a wholesale supply house for heating and air-conditioning parts"; that it "carried a very small number of products which may have contained asbestos and which comprised a minute portion of its total product line and sales"; and that it "was never in the business of mining, producing, or manufacturing any asbestos-containing products." [Docket Entry 124-2, ¶¶ 9 and 1.] Neither Sid Harvey nor Plaintiff has identified any of the products Sid Harvey carried which contained asbestos.

### D. Warren

Vesper's claims against Warren relate to Vesper's work at New York Ship Building Company. At his deposition, Vesper

described what he believed to be his exposure to asbestos while working as a machinist for New York Ship Building. Vesper stated that he believed he had been exposed to asbestos due to working in close proximity to others installing asbestos-containing materials in the context of pumps, piping, and the main propulsion system of the ship [Docket Entry 114-1, Pl. Dep. 222:11-223:20] and due to work being done on piping associated with already-installed pumps [id. at 223:24-224:17]. Vesper also described the installation of valves associated with the pumps; he stated that machinists (like himself) would install and mount the pump and make a gasket for the valve of the pump using asbestos cloth. [Id. at 225:9-227:14.] He was also exposed to asbestos by other workers hammering on the asbestos cloth gaskets in close proximity to him in the process of mounting valves: "The valves were handing. They're hammering [the asbestos cloth gaskets] right over your head or right alongside of you at the same time." [Id. at 228:5-19.]

Vesper testified that he personally manufactured an asbestos gasket for a transfer pump on the USS Kitty Hawk [id. at 231:7-232:10], personally "did a significant amount of . . . gasket work" on the USS Little Rock [id. at 957:5-9], personally made asbestos cloth gaskets for valves in the containment vessel reactor for the USS Savannah [id. at 278:23-279:12], and

15

personally made asbestos cloth gaskets for valves in the engine room and containment vessel of the Savannah [id. at 281:15-282:12]. Vesper was also exposed to asbestos in the Savannah's engine room by other workers applying asbestos-containing material to plumbing and piping. [Id. at 282:4-5; 282:20-283:5.] Vesper described installing valves on a Shell Oil tanker; his testimony was ambiguous as to whether he was exposed to asbestos during that job. [Id. at 354:22-356:9.]

Vesper testified that "the manufacturer of the pumps that [he] worked on required as asbestos gasket to be used" and that the pumps would "probably" not function "without the asbestos gaskets". [Id. at 956:14-957:4.] Vesper also testified that he personally worked with Warren pumps at New York Ship and made gaskets for them, which created dust that Vesper inhaled.

Warren's counsel, Timothy Rau, asked Vesper whether Vesper could recall any specific ship upon which he "would have seen a Warren pump" and Vesper could not; nor could he state where, when, or how many times he would have seen a Warren pump. [Id. at 993:6-994:10.] Rau asked Vesper:

> Q: Okay. I think you told your counsel that you recalled making gaskets for use on a Warren pump; is that true?
> A: In my mind, I'm saying yes, because almost 99 percent of the time I made gaskets. If I did a pump or I did a flange, I made a gasket.
> . . .

16

> I recall installing Warren pumps. I remember the name,
> Warren, being written on them, and I remember making
> gaskets. So I'm going to have to say yes to that.
> Q: Sit here and say that you specifically recall doing
> that on a Warren pump, is that something that you can
> or cannot do?
> A: Yes, I think, yes.
> Q: Are you able to say how many times you would have
> made a gasket on a Warren pump?
> A: I have no clue.

[Id. at 994:11-995:11.]

Plaintiff also submitted a medical report dated March 8,

2016, prepared by Dr. Stephen L. Newman, M.D., who concluded to

a reasonable degree of medical certainty that "Mr. George Vesper

developed asbestos induced pleural disease because of his

cumulative occupational exposure to asbestos dust[,]" including

his work "at New York Shipbuilding [sic] as a machinist helper"

near "asbestos insulated . . . rooms" and "a variety of asbestos

equipment such as gaskets, asbestos cloth, [and] asbestos

insulation[.]" [Docket Entry 114-4 at 2.]

In earlier, unrelated proceedings, Warren's corporate

representative, Roland Doktor, testified that Warren has

manufactured pumps that included "asbestos-containing

components" (including "asbestos thermal insulation," "asbestos-

containing gaskets," and "asbestos-containing packing").

[Doktor's Dep., Docket Entry 114-10, 10:5-14:9.] Doktor also

testified that a condenser circulating pump, later installed on

the naval ship USS Willis A. Lee, included asbestos components,

17

namely, a gasket and asbestos packing. [Id. at 229:1-19.] Doktor testified at a different deposition that condenser circulating pumps, made by Warren, were delivered to New York Ship Building for installation in the USS Kitty Hawk sometime after February 17, 1958. [Doktor's Second Dep., Docket Entry 114-14, 10:11-11:21.] Doktor also testified that on "list[s] of materials" on technical drawings of a Warren condenser circulating pump, asbestos sheet gaskets, asbestos sheets, and asbestos packing were listed as component parts. [Id. at 14:15-20:8.] He also testified that the main condenser circulating pump would normally be located in the engine room of the ship. [Id. at 21:20-22:4.]

Doktor identified two different pumps, one described as a "distilling unit" and one as a "bilge and fuel oil tank stripping pump," both of which also contained asbestos-containing components per their "list[s] of materials," and were also shipped to the USS Kitty Hawk from Warren. [Id. at 38:13-41:25; 46:3-47:4.] Doktor testified that it was his understanding that certain repairs or maintenance on Warren pumps would have required someone to "potentially replace the gaskets" or to "reseal [a joint] with a gasket[.]" [Id. at 44:7-45:2.]

18

Doktor discussed another pump, depicted in "Drawing BS5-2021" which included on one side of the drawing the statement "under 'General Notes,' 15, 'Insulation and lagging to be provided by shipbuilder,'" and on the other side of the document, the description of "insulating material of '85 percent magnesia, smoothed and pointed with . . . plastic[,]' [meaning] 85 percent magnesia, 15 percent asbestos insulation[.]" [Id. at 49:3; 55:1-15.] When asked directly whether "these specifications seem to be calling for asbestos insulation" or whether "Warren Pumps require[d] asbestos insulation for this pump[,]" Doktor replied that "the pump is built to a military specification, and the specification indicates those parts and those components that go into making up the pump." [Id. at 56:1-12.] Doktor described an asbestos-containing insulating ring and insulating material for the same pump "which would be installed by [workers at] the shipyard." [Id. at 54:2-6.]

## II.  STANDARD OF REVIEW

At summary judgment, the moving party bears the initial burden of demonstrating that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once a properly supported

motion for summary judgment is made, the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). In reviewing a motion for summary judgment, the court is required to examine the evidence in light most favorable to the non-moving party, and resolve all reasonable inferences in that party's favor. Hunt v. Cromartie, 526 U.S. 541, 552 (1999); Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). Credibility determinations are not appropriate for the court to make at the summary judgment stage. Davis v. Portlines Transportes Maritime Internacional, 16 F.3d 532, 536 n.3 (3d Cir. 1994).

A factual dispute is material when it "might affect the outcome of the suit under the governing law," and genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. The non-moving party "'need not match, item for item, each piece of evidence proffered by the movant,'" but must simply present more than a "mere scintilla" of evidence on which a jury could reasonably find for the non-moving party. Boyle v. Cnty. of Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Anderson, 477 U.S. at 252).

**III. ANALYSIS**

20

### A. Buffalo

Buffalo argues that Plaintiff has not offered evidence sufficient to allow a reasonable finder of fact to conclude that Plaintiff was exposed to asbestos as a result of work performed on, around, or near any of Buffalo's pumps, components, or other products. The Court agrees.

The factual record for purposes of Buffalo's motion is undisputed. [Docket Item 107 at 2-4.] Because Plaintiff has filed no opposition, the Court deems the facts set forth by Defendant undisputed for purposes of the pending summary judgment motion.[2] See L. CIV. R. 56.1(a).

A threshold question concerns the applicability of substantive maritime law as opposed to New Jersey law. Buffalo argues that, to the extent Plaintiff alleges that his work with or near Buffalo products occurred while working on U.S. naval ships at the New York Ship Building Company, maritime law applies to Plaintiff's claims. [Docket Entry 107 at 5-8.] The Court need not reach this issue, as Plaintiff has not presented sufficient evidence to allow a reasonable finder of fact to conclude that Plaintiff was exposed to asbestos attributable to

---

[2] Plaintiff has not filed any opposition to these motions. Plaintiff's deadline to file oppositions to the three motions expired on March 29, 2016. Despite filing no opposition, Plaintiff has, through counsel, actively participated in this litigation since the opposition deadline. [See Docket Item 124.]

Buffalo, which is a required element of Plaintiff's prima facie case under either maritime law or New Jersey law.

Plaintiff was asked at his deposition with what objects he associated the name "Buffalo" and answered, "[E]ither pumps or valves or something of that nature." [Pl. Dep. 792:18-23.] Although Vesper stated that he "know[s] [he's] had Buffalo in [his] hands . . . [and has] been around Buffalo equipment and stuff" (a statement the Court credits), he ultimately could not say whether any Buffalo pumps or valves were aboard any ship upon which he worked, nor could he offer any testimony "that [he was] exposed to asbestos from a Buffalo pump or valve[.]" [Id. at 793:22-794:18.] Plaintiff has not offered any additional evidence regarding Buffalo pumps, whether or how Plaintiff might have been exposed to them, and how they might have related to any asbestos exposure he suffered.

Given that testimony and the absence of any additional evidence or testimony (including any evidence that Buffalo pumps or valves did indeed contain asbestos or require asbestos-containing components) which would allow a reasonable finder of fact to conclude that Plaintiff was exposed to asbestos attributable to Buffalo, the Court finds that based on the undisputed facts in the record, summary judgment is warranted for the defendants.

**B. DAP**

DAP argues that summary judgment should be granted in its favor because Plaintiff has failed to present sufficient evidence showing that he was exposed to asbestos in a DAP product. The Court disagrees.

Under New Jersey asbestos law, a plaintiff must provide sufficient direct or circumstantial evidence that allows an inference that the plaintiff was "exposed to a defendant's friable asbestos frequently and on a regular basis, while [he or she was] in close proximity to it (balancing these factors)[.]" Sholtis v. American Cyanamid Co., 568 A.2d 1196, 1208 (N.J. App. Div. 1989). New Jersey courts have noted that the "frequency, regularity and proximity test" "is not a rigid test with an absolute threshold level necessary to support a jury verdict." James v. Bessemer Processing Co., Inc., 714 A.2d 898, 910 (1998) (citing Tragaz v. Keene Corp., 980 F.2d 411, 420 (7th Cir. 1992)). New Jersey courts have on occasion applied a more relaxed standard, with regard to the particular factual circumstances of the case: "[T]he amount of evidence needed to establish the regularity and frequency of exposure will differ from case to case. For example, none of the plaintiffs in this case were diagnosed with mesothelioma, an asbestos-related

disease which is caused after only minor exposure to asbestos dust." Kurak v. A.P. Green Refractories Co., 689 A.2d 757, 765-66 (N.J. App. Div. 1997) (quoting Wehmeier v. UNR Industries, Inc., 572 N.E.2d 320, 337 (Ill. App. Ct. 4th Dist. 1991)).

New Jersey courts have found proximate cause and product identification in cases where a plaintiff "placed himself in close proximity in relatively small rooms to asbestos-containing products . . . which were friable," although the plaintiff did not "testify that he often found himself covered with dust." Kurak, supra, 298 N.J. Super. at 321. See also Dafler v. Raymark Industries, Inc., 611 A.2d 136, 148 (N.J. Super. Ct. App. Div. 1992) (upholding liability in a case filed by shipyard worker at New York Ship Yard and finding sufficient proof to allow inferences of "frequency, regularity and proximity"); Goss v. American Cyanamid Co., 650 A.2d 1001, 1006 (N.J. App. Div. 1994) (finding product identification and proximate causation where, among other potential exposures, plaintiffs "were exposed to asbestos indirectly while their co-workers installed the asbestos-containing insulation"); Rotondo v. Keene Corp., 956 F.2d 436, 441 (3d Cir. 1992) (finding proximity, regularity, and frequency of asbestos exposure to plaintiff who worked in a boiler room where others were covering pipes with defendant's asbestos-containing pipecovering).

24

DAP argues in its motion that Vesper failed to present evidence that he "was exposed to asbestos-containing products manufactured, sold, supplied, and/or attributable to DAP, Inc. k/n/a La Mirada Products, Co., Inc." or "that he was exposed to such friable asbestos-containing products on a regular and frequent basis and that he worked in close proximity to such products[.]" [Docket Entry 98-1 at 7-8.] Specifically, DAP states that although Vesper identified DAP as the maker or supplier of an asbestos-containing "[c]aulking, [c]ement, [and/or j]oint-[c]ompound [p]roduct" in his responses to interrogatories, Vesper in fact testified that he

> identified working with a DAP joint compound and a Dap spackle. . . . When asked if the product was a caulk, he testified that it was a spackle. . . . In fact, through Mr. Vesper's description, it is clear that he is using the product as a spackle of joint compound would be used in association with his sheetrock work.

[Id. at 5.] DAP continues that its spackles does not and has never contained asbestos, and that it did not manufacture a joint compound before 1978 (when it ceased manufacturing and selling products which contained asbestos). [Id.] The crux of DAP's argument is this allegation: "Mr. Vesper testified that he used a DAP . . . product, which he specifically identified as a spackle or compound, even when asked if the product was a caulk." [Docket Entry 98-1 at 14.] The Court does not agree that this accurately restates Vesper's testimony.

For this assertion, DAP appears to be pointing to the following exchange in Plaintiff's deposition:

> Q: If I understood your testimony correctly, you used DAP caulk; is that correct?
>
> A: DAP caulk and DAP spackling. I think it was more than – I see it as a spackling, what we called mud type of product, also.

[Docket 110-3, Pl. Dep. 658:19-25.][3] The exchange continues, immediately thereafter:

> Q: How did it come packaged?
>
> A: My recollection is that it was in – I used DAP in tubes for something, and I also used DAP in a container.

[Id. at 659:1-4.] Later, Vesper was asked, "For that job, would you have used one tube of the caulk and one container?" and replied, "Yes." [Id. at 661:2-5.]

Plaintiff in his Response stated that he had indeed identified using two DAP products, at least one of which was a "caulk." [Docket Entry 110 at 2.] Vesper also stated in his sworn affidavit of March 23, 2016 that he used those two DAP products on a regular and frequent basis and that he "would be exposed to dust from these products when [he] needed to sand them so [he] could apply a new coat." [Docket Entry 110-4 at 4.]

---

[3] Although DAP cites precisely to this exchange in its brief [Docket Entry 98-1 at 10], this exchange was not attached as an exhibit to its motion.

He continued: "Had I been asked about the frequency of my use of these products during the course of my deposition, I would have testified accordingly." [Id.] In reply, DAP asks the Court to apply the "sham affidavit doctrine" and disregard this purportedly-new allegation, because the testimony (which DAP characterized as "contradict[ing] Vesper's] prior deposition testimony") at Vesper's deposition established that Vesper stated "as to the product he used, 'I see it as a spackling.'" [Docket Entry 126 at 2.]

Vesper's testimony at his deposition clearly indicates that he used not one, but two products, both of which he stated were made by DAP. He identified one as a "caulk," described its packaging in a tube, and described using it in a caulking gun. The other, he described as coming in a container and stated: "I think it was more than – I see it as a spackling, what we called mud type of product." This phrase—"I see it as a spackling"—is most properly read to modify the second clause of the conjunctive statement, "DAP caulk and DAP spackling," which Vesper gave as a response to the question, "[Y]ou used DAP caulk; is that correct?"

As DAP aptly states in its reply:

> This distinction [between caulk and spackle] is of no small moment, and there is a clear distinction between a caulk, used in seams for doors and/or windows, and a

spackle, used to patch holes in an uneven surface,
typically wallboard.

[Id.] However, the Court does not agree that Vesper "was
specifically asked if the product was a caulk and he instead
stated that the product was a spackle." [Id.] Moreover, Vesper
described using two different DAP products, one of which was
described repeatedly as caulk, in two different ways as part of
doing sheetrock repair within the two residences. [Pl. Dep.
659:2-669:12.] Plaintiff has presented evidence that DAP's
caulk, at or around the relevant time period, contained
asbestos. [Docket Entries 110-4 and 110-5.] He testified that,
as part of doing sheetrock repairs using DAP products, he would
sand the surface onto which he had applied both DAP products.
[Pl. Dep. 665:17-22.] This process is the means by which
Plaintiff alleges that he was exposed to friable asbestos
attributable to DAP sufficient to establish DAP's liability, and
the Court finds that he has presented enough evidence to allow a
reasonable finder of fact to so find, by a preponderance of the
evidence.

Although DAP stated in its interrogatory responses that
"[a]ny of [its] products that contained encapsulated chrysotile
asbestos were premixed, wet and gooey formulations thereby
making the asbestos fibers non-respirable[,]" it also stated

that "any alleged hazard is the subject matter of this litigation." (Docket Entry 98-8, DAP Interrog. Resp. B.14 and B.23.) The Court likewise agrees that, at this stage of the proceedings, summary judgment cannot be granted on this ground as it is the subject matter of this litigation and an appropriate question for the finder of fact.

DAP is free to argue in due course that the evidence does not establish by a preponderance that Plaintiff was actually exposed to friable asbestos attributable to it; that Plaintiff did not use caulk; that what he remembered as caulk was a different product; that caulk is or was not suitable for use in the way Vesper described; or that its caulk would not behave in the way he described; or any other appropriate arguments it believes are inferable from the factual record as it develops. However, it is not the role of a court assessing a motion for summary judgment to arrive at these types of credibility or factual determinations; any such conclusions would be for the finder of fact. On the evidence presented, a reasonable finder of fact could determine that Plaintiff was sufficiently exposed to asbestos attributable to DAP, and for that reason, the Court will deny DAP's motion for summary judgment.

**C. Sid Harvey**

Sid Harvey argues that Plaintiff has failed to produce evidence tending to show that he was exposed to asbestos due to contact with an asbestos-containing product made, sold, distributed, or otherwise attributable to Sid Harvey. The Court agrees.

A plaintiff must show that he was injured by a specific product, manufactured, sold, distributed, or otherwise attributable to a specific manufacturer or other party in order to make out a prima facie case in a product liability action against that party. NOPCO Chemical Div. v. Blaw-Knox Co., 59 N.J. 274, 284 (1971). Here, Plaintiff must provide evidence sufficient to raise a genuine issue of material fact that he was, or likely was, exposed to asbestos as a result of his use of or proximity to a product made, distributed, or provided by Sid Harvey.

Plaintiff's only evidence regarding Sid Harvey arises from 1) his bare-bones and conclusory answers in his interrogatory responses that he was exposed to asbestos through Sid Harvey furnace cement and/or other "asbestos products" it supplied or distributed; and 2) his statement at his deposition that he associates Sid Harvey with a cement of unknown type that he remembers using in the 1970s. Plaintiff stated that he did not know whether the cement he remembered contained asbestos; nor

30

has Plaintiff produced or pointed to any other evidence in the record that the cement Plaintiff used (or any cement Plaintiff was likely to have used) either did or likely would have contained asbestos. While Sid Harvey's responses to interrogatories were themselves bare-bones, the sum of the evidentiary record would not allow a reasonable finder of fact to conclude that Vesper was exposed to asbestos via a Sid Harvey product. Plaintiff argues that a "material such as furnace cement is clearly a product which would have been within the purview of" Sid Harvey, which "sold materials related to heating and air conditioning." [Docket Entry 124 at 4.] While this is so, this does not tend to establish that the cement Vesper recalled using or the furnace cement he cited in his interrogatory responses contained asbestos.

To find that Sid Harvey products exposed Plaintiff to asbestos, or that there is a genuine dispute of material fact as to this point, would be to speculate beyond what evidence is contained in the record. Because of this, the Court will grant summary judgment to Sid Harvey.

**D. Warren**

Warren argues that Plaintiff has not produced sufficient evidence tending to show a genuine dispute of material fact that

Plaintiff was exposed to any asbestos-containing component part manufactured or supplied by Warren Pumps. (Docket Entry 95-3 at 13.) The Court disagrees.

As discussed above, see Section III.B., supra, under New Jersey asbestos law, a plaintiff must provide evidence to prove proximate causation of his or her injury by means attributable to the particular defendant that meets the "frequency, regularity and proximity test" laid out in Sholtis, though the test takes into account the particular circumstances of the case and is "not a rigid test." James, supra, 714 A.2d at 910.

Plaintiff has supplied evidence that Warren pumps, specifically those which had or required asbestos-containing components (including asbestos gaskets), were supplied to New York Ship Building during the time frame when Plaintiff worked there. See Docket Entry 114-14 at 11-79. Such pumps were shipped for installation aboard the USS Kitty Hawk. Id. Plaintiff has testified that he was exposed to asbestos aboard the USS Kitty Hawk: in his deposition, Vesper described at length the making of asbestos gaskets for pumps aboard the Kitty Hawk and stated his belief that that was one way he had been exposed to asbestos aboard that ship. (Pl. Dep. 225:17-228:19; 231:1-232:14.) This is contrary to Warren's inaccurate assertion in its motion that Vesper "specifically attributed his exposure to asbestos aboard

32

the Kitty Hawk to pipe and valve insulation and did not recall being exposed to asbestos aboard the Kitty Hawk in any other manner" [Docket Entry 95 at 3].[4]

Warren argues that Plaintiff did not state that he recalled working on Warren pumps specifically on the USS Kitty Hawk or any other specific ship, but this is not fatal to his claims. Plaintiff has put forth sufficient evidence to present a genuine issue of material fact regarding his exposure to asbestos attributable to his work with Warren pumps, given that he has testified that he remembers working on Warren pumps while working at New York Ship Building; that he has described being exposed to asbestos due to making gaskets for pumps; and has put forth evidence that Warren supplied pumps with or requiring such asbestos gaskets to a ship upon which he worked at the relevant time. A reasonable finder of fact could conclude, despite the lack of direct testimony by Plaintiff that he remembers working on Warren pumps on the Kitty Hawk, for example, that his memory of working on Warren pumps, his memory of working with asbestos

---

[4] Warren similarly misstates the record in saying that "Mr. Vesper's individual work on the Savannah did not cause him to be exposed to asbestos": Warren cites to a portion of Vesper's testimony wherein he states that his "individual work" of "*aligning the steam turbine*" (emphasis added) on the Savannah did not expose him to asbestos (Pl. Dep. 273:14-22), but ignores the portion of his testimony where he described making asbestos gaskets aboard the Savannah (id. at 278:23-279:12).

gaskets on the Kitty Hawk, and the presence of Warren pumps with
or requiring asbestos gaskets on the Kitty Hawk--when taken
together--make it more likely than not that Plaintiff was
exposed to Warren pumps' asbestos-containing components during
his time at New York Ship Building.

Warren also argues that Plaintiff has not produced
sufficient evidence that would allow a reasonable trier of fact
to conclude that Warren or its products could be considered a
substantial factor (i.e., a proximate cause) in causing
Plaintiff's asbestosis. (Docket Entry 95-3 at 17.) It argues
that Plaintiff has not shown sufficient evidence of frequency,
proximity or regularity of exposure to Warren-supplied or
Warren-manufactured asbestos-containing equipment, components,
or products. (Id. at 19.)[5] The Court finds that, in accordance
with Goss and Dafler, described supra, Plaintiff has presented
sufficient evidence to establish a genuine dispute of material
fact as to this issue by presenting evidence and testimony
regarding his work on Warren pumps, on the Kitty Hawk, and with
asbestos gaskets during his time at New York Ship Building.

---

[5] Warren argued in its initial motion that Plaintiff did not
supply expert, medical, or scientific evidence of a nexus
between Plaintiff's exposure to asbestos and his subsequent
asbestosis. However, Plaintiff cured any such defect with the
filing of Dr. Newman's affidavit. (Docket Entry 114-4.)

Plaintiff avers that he is owed discovery promised to him by Warren, and that his "tangible proof concerning his claims is consequently limited." [Docket Entry 114 at 2.] The Court finds that he has nevertheless produced sufficient evidence to raise a genuine issue of material fact as to his exposure to asbestos through his work upon or near Warren pumps or components, and as to the relationship of such exposure to his subsequent claimed injury. As such, Warren's motion for summary judgment will be denied.

**IV.   CONCLUSION**

For the reasons discussed herein, Defendant Buffalo's and Sid Harvey's respective motions for summary judgment will be granted and Defendant DAP's and Warren's respective motions for summary judgment will be denied. The accompanying Order will be entered.


 **December 19, 2016**                      **s/ Jerome B. Simandle**
Date                                        JEROME B. SIMANDLE
                                            Chief U.S. District Judge